UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDRE SMITH,
          Plaintiff

-vs-

DENTIST DR. RAYMOND HAAG, et al.,

          Defendants
_____

DECISION AND ORDER

08-CV-6360 CJS

INTRODUCTION

   Plaintiff, a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"), is suing pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights by denying him appropriate dental care. Now before the Court is Plaintiff's application for a temporary restraining order [#32]. For the reasons that follow, the application is denied.

BACKGROUND

   On August 11, 2008, Plaintiff filed an application for preliminary injunctive relief [#3], requesting that he be provided with dental care. Specifically, Plaintiff alleged that he needed a root canal on one tooth and fillings in three others. Plaintiff further alleged that three nurses, Angela Gorg ("Gorg"), Jill Jilson ("Jilson"), and Diane Weed ("Weed"), and a dentist, Dr. Raymond Haag ("Haag"), denied him all dental treatment for fourteen months. Plaintiff requested an order directing Defendants to "provide a fixed or removable prosthetic device commonly known as a bridge or denture to the Plaintiff to replace the Plaintiff's missing tooth and to provide three fill[ings] to fill in the Plaintiff's three cavities and to provide root canal work on the Plaintiff's front tooth." (Proposed Order).

1

When Plaintiff filed the application for injunctive relief, Defendants had not been served with the summons and complaint, or with the application for injunctive relief. Nevertheless, the Court forwarded the application for injunctive relief to the local office of the New York State Attorney General, and requested that it investigate Plaintiff's claim. On November 8, 2008, the Attorney General submitted a response (Docket No. [#6]), indicating that, between July 28, 2008 and October 17, 2008, Plaintiff had received dental treatment on seven occasions. The response also indicated that Plaintiff was scheduled for another dental appointment during the second week of November 2008, and that following that appointment, "there w[ould] be no outstanding requests by Mr. Smith for any further dental work." The Attorney General maintained that the application for injunctive relief was, therefore, moot.

On December 10, 2008, the Court mailed Plaintiff a copy of the Attorney General's letter. Subsequently, the Court ordered Plaintiff to file and serve a sworn reply, "addressing the specific claims in the Attorney General's submission, and stating whether he in fact has received the dental care that he was requesting in his application for injunctive relief." (Order [#18]).

On February 13, 2009, Plaintiff filed a reply [#20]. However, Plaintiff did not directly address the Claims in Defendant's response. Instead, he leveled new allegations against Dr. Haag and Christy Alchimowicz ("Alchimowicz"), a dental assistant, concerning events that allegedly occurred in January and February of 2009. More specifically, Plaintiff alleged that Haag had denied him a partial denture, purportedly because Plaintiff did not meet DOCS guidelines concerning the same. Plaintiff contended, however, that Haag told him he could receive the partial denture at a cost of $190. Plaintiff also contended that he had

"not received a root canal in three years." Finally, Plaintiff alleged that in February 2009, he was placed on a waiting list to receive a dental cleaning, but had not received the cleaning.

On April 14, 2009, the Court issued a Decision and Order (Docket No. [#31]), denying preliminary injunctive relief. The Court found that Plaintiff's claims were almost entirely moot, since Plaintiff had received dental care. As for Plaintiff's request for a root canal and partial denture, the Court found that Plaintiff had not established that the former was medically necessary, or that he was entitled to the latter under DOCS's regulations.

One week later, on April 23, 2009, Plaintiff filed the subject application for injunctive relief (Docket No. [#32]). Specifically, Plaintiff seeks an "emergency order" directing Haag and Alchimowicz to provide him with "two (2) partial dentures to replace his two (2) missing teeth free of charge." (Plaintiff's Motion [#32] at 1). In support of the application, Plaintiff maintains that Haag, Alchimowicz, and others are basically responsible for him losing his two teeth, since they delayed providing him with fillings for cavities. Plaintiff states that Haag and Alchimowicz told him that he did not qualify for dentures under DOCS's guidelines, but that he could pay for the dentures himself. Plaintiff alleges that he will suffer irreparable harm if he is not provided with partial dentures, since the two missing teeth have left parts of his gums exposed, which causes pain and bleeding when he eats.

In response, Defendants maintain that Plaintiff has not shown that he will suffer irreparable harm if his application is denied, or that he is likely to succeed on the merits of his underlying action. Defendants' counsel states that on May 20, 2009, he deposed Plaintiff, at which time,

Plaintiff was jovial and relaxed and participated freely in the two hour

3

deposition. There was no visible evidence that his gums were bleeding or that he was in need of any immediate dental care. Plaintiff demonstrated at the deposition that he has eight contiguous teeth across the front upper part of his mouth. On either side of these eight contiguous teeth, is a missing tooth; one on the right upper and one on the left upper part of his mouth. These missing teeth are not visible unless the plaintiff smiles or pulls back his cheeks with his fingers to reveal the missing teeth. . . . With eight contiguous teeth across the front upper, the plaintiff does not meet DOCS guidelines for free dentures.

(Kidera Affidavit [#40] ¶ ¶ 5-6).

On May 28, 2009, Plaintiff filed reply papers, in which he states that, during his deposition, Defendants' counsel offered to provide him with dentures in exchange for settling the lawsuit. Plaintiff states that he declined the offer. However, Plaintiff reasons that the settlement offer is proof that he is likely to succeed on the merits of his case. (Reply Brief [#42] at ¶ 3). Plaintiff also maintains that he is entitled to receive the dentures pursuant to DOCS's Health Services Policy 2.01 section c(2)(I), which, he contends, provides for dentures fo missing "maxillary or mandibular anterior teeth." *Id*. at p. 6. According to Plaintiff, he meets this requirement, since he has "two (2) maxillary anterior teeth missing . . . . . Tooth #5 and tooth #13 . . . are maxillary teeth." *Id*. Plaintiff does not dispute Defendants' counsel's description of the location of his missing teeth.

On June 15, 2009, Defendants filed a sur-reply (Docket No. [#48]), in which they reiterate that Plaintiff does not qualify for dentures, since his missing teeth are not anterior teeth.

ANALYSIS

The standard to be applied when considering an application for preliminary injunctive relief is well settled:

A party seeking a preliminary injunction ordinarily must show: (1) a likelihood

of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor. When the movant seeks a 'mandatory' injunction-that is, as in this case, an injunction that will alter rather than maintain the status quo- [he] must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits.

*Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (citations omitted). Violation of a constitutional right is considered "irreparable harm." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir.1996) ("The district court . . . properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights."); *see also*, *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir.1998) ("In the context of a motion for a preliminary injunction, violations of First Amendment rights are commonly considered irreparable injuries.") (citation and internal quotation marks omitted). Moreover, "[t]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Candelaria v. Baker*, No. 00-CV-0912E(SR), 2006 WL 618576 at *3 (W.D.N.Y. Mar. 10, 2006) (citation omitted); *accord, Taylor v. Rowland*, No. 3:02CV229(DJS)(TPS), 2004 WL 231453 at *2-3 (D.Conn. Feb. 2, 2004).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are equally well-settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).

***

> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Plaintiff alleges that Defendants violated his Eighth Amendment rights in connection with his medical treatment, and the legal standard for such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level

of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998)("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

Here, the parties agree that the relevant policy is DOCS's Health Services Policy Number 2.0, § C(2)(I), which states, in pertinent part, that the scope of services to be provided to inmates includes

> [p]reventive, prophylactic and other routine dental services deemed essential to rehabilitate and/or maintain an adequate level of dental health for the inmates of all of the Department's correctional facilities that will include: . . . Construction, placement and repair of full dentures or partial dentures. Partial removable dentures should be constructed if the inmate has fewer than six (6) occluding posterior teeth or if one or more of the maxillary or mandibular *anterior* teeth are missing.

(Kidera Sur-reply Aff. [#48], Exhibit A) (emphasis added). Plaintiff insists that he is entitled to partial dentures under this rule, since the two missing teeth, designated as numbers five and thirteen, are "anterior maxillary" teeth. However, under the universal numbering system for teeth, tooth numbers five and thirteen are posterior, not anterior:

> The permanent anterior teeth, twelve in number, comprise the three teeth nearest the midline in each quadrant of the jaw: the central incisor, the lateral incisor, and the cuspid or canine.
>
> The permanent posterior teeth, twenty in number, comprise the five teeth furthest from the midline in each quadrant: the two bicuspids or premolars, and the three molars.
>
> There are ten primary teeth in each jaw. The primary anterior teeth in each quadrant are the central incisor, the lateral incisor, and the cuspid, and the posterior teeth are the two primary molars.
>
> Various systems of tooth notation are in use to identify specific teeth. In the United States, the Universal system generally has been adopted. In the Universal system, each tooth is given an Arabic numeral. Numbering starts

with 1, assigned to the patient's upper right third molar (most posterior molar) and continues in sequence to the patient's upper left third molar, 16. It then drops down to the lower left third molar, 17, and continues to the lower right third molar, 32.

11 AM. JUR. PROOF OF FACTS 3d 1 (footnotes omitted). The six anterior maxillary teeth are numbered six through eleven. The two teeth that Plaintiff is missing, numbers five and thirteen, are not among the six anterior maxillary teeth. Consequently, Plaintiff is incorrect in claiming that he is entitled to partial dentures pursuant to Health Services Policy Number 2.0, § C(2)(I). Additionally, Plaintiff has not otherwise shown that he is entitled to preliminary injunctive relief.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for a temporary restraining order [#32] is denied.

So Ordered.

Dated: Rochester, New York
September 3, 2009

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge