UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANDRE SMITH,

Plaintiff,

-vs-

DOCTOR RAYMOND HAAG, Dentist, CHRISTY
ALCHIMOWICZ, Dental Assistant, LISA HAYTH,
Dental Hygienist, et al.,

Defendants.

08-CV-06360-CJS

DECISION and
ORDER

INTRODUCTION

Plaintiff, a prison inmate previously[1] in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"), is suing pursuant to

42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights by

denying him appropriate dental and medical care and by retaliating against him.  Now

before the Court is Plaintiff's motion for partial summary judgment [#54] and Defendants'

cross-motion for partial summary judgment [#69].  For the reasons that follow, Plaintiff's

motion is denied and Defendants' cross-motion is granted in part and denied in part.

BACKGROUND

On August 11, 2008, Plaintiff commenced this action.  Plaintiff's Complaint [#1]

makes the following allegations.  Prior to April 2, 2007, Plaintiff was housed at Auburn

Correctional Facility ("Auburn"), where he was scheduled to receive fillings for cavities in

four of his teeth.  Apparently due to a disciplinary infraction, Plaintiff was sentenced to

---

[1] Andre Smith, a/k/a Andre Stuckey, was released from DOCCS custody in September 2009 and is now
confined at North Kern State Prison in California.

serve time in the Special Housing Unit ("SHU") at Southport Correctional Facility ("Southport").  Consequently, Plaintiff was transferred out of Auburn before receiving the dental fillings.  Between April 2, 2007 and May 10, 2007, Plaintiff was housed at Attica Correctional Facility ("Attica"), apparently while en route to Southport.

On May, 11, 2007, Plaintiff arrived at Southport.  At all relevant times, the defendants were employed at Southport, as follows:  Dr. Raymond Haag ("Haag") was employed as a facility dentist; Christy Alchimowicz ("Alchimowicz") was employed as a dental assistant; Lisa Hayth ("Hayth") was employed as a dental hygienist; Heman Fowler ("Fowler") and Jill Northrop ("Northrop") were employed as nurse practitioners; Catherine Felker ("Felker") was employed as a nurse administrator; and Diana Weed ("Weed"), Angela Gorg ("Gorg") and Jill Jilson ("Jilson") were employed as nurses.

During medical screening conducted upon his arrival at Southport, Plaintiff told Weed that he had pain in four teeth, which needed fillings.  Plaintiff further told Weed that he had previously been scheduled to receive such fillings at Auburn prior to his transfer to Southport.  Plaintiff asked Weed to place him on the list to see the dentist.  Plaintiff indicates that the following day, May 12, 2007, he reminded Weed that he needed to see the dentist. Complaint [#38] ¶ 38.

Plaintiff indicates that between May 11, 2007 and July 27, 2008, he wrote approximately fifteen letters to the Southport Dental Department, requesting that he receive fillings for his four cavities.  Plaintiff did not receive any dental treatment until July 2008, more than a year after he arrived at Southport.  During that period, Plaintiff experienced pain and lost two of his teeth to decay.  Because Haag, Alchimowicz and Hayth did not provide him treatment, Plaintiff seeks to hold them liable for violating his

Eighth Amendment rights. Complaint [#1] ¶ 18.

In addition to writing letters to the dental department, Plaintiff made numerous requests for dental treatment to Southport's medical staff.  On March 31, 2008 and April 28, 2008, Plaintiff asked Jilson to make an appointment for him to see Haag.  However, Plaintiff alleges that Jilson told him that she was placing him on the bottom of the waiting list, because the facility could not afford his dental treatment, and because Plaintiff was "Public Enemy Number One" at Southport.  On July 22, 2008 and July 24, 2008, Plaintiff alleges that Jilson told him that she was refusing to give him  hydrocortison cream he had requested, because he had filed grievances against her.

Plaintiff also asked Gorg to make an appointment for him to see Haag on many occasions, specifically:  April 11, 2008, April 18, 2008, May 14, 2008, May 16, 2008, June 30, 2008, and July 7, 2008.  However, Plaintiff maintains that Gorg told him that she was placing him on "the bottom of the list" to see Haag, to punish Plaintiff for filing lawsuits against Southport staff.  Plaintiff further states that on July 11, 2008, Gorg threatened to have corrections officers harm him, in response to his filing of a grievance against her.  In addition, Plaintiff contends that on several occasions in May 2008 and July 2008, he asked Gorg to provide him with ointment for dry skin, but she refused his requests.  On July 14, 2008, Plaintiff states that he asked Gorg for hydrocortisone cream for a skin rash, and she responded that she would not give him any medical care, in order to teach him not to file grievances against her.  On July 15, 2008 and July 16, 2008, Plaintiff contends that Gorg ignored him while making her rounds, even though he had signed up for sick call. Complaint [#1] at ¶ 53.[2]  On July 17, 2008 and July 18, 2008, Plaintiff

---

[2] Plaintiff alleges that Gorg "walked right by" his cell, but he also alleges that she stopped and made threatening comments to him. Complaint [#1] at ¶ ¶ 53-54.

maintains, Gorg also denied him hydrocortisone cream and verbally threatened him in response to grievances that he had filed against her.

On July 1, 2008, one of Plaintiff's four decaying teeth fell out.  On July 2, 2008, Plaintiff wrote to Haag, informing him that his tooth had fallen out, and requesting a denture to replace the tooth.  Plaintiff also reiterated that he was in pain from his remaining three cavities.

In or about July 15, 2008, Plaintiff experienced "increasing chest pains," and he maintains that Felker, Gorg, and Jilson refused to provide him with medical care. Complaint [#1] ¶ 74.   Plaintiff alleges that he had made arrangements to have an x-ray taken to determine the cause of his pain, but Gorg cancelled the test in order to retaliate against him.  *Id*. at ¶ 76.  Plaintiff contends that he notified Felker that Gorg was denying him medical care, but Felker did nothing.  He further contends that on July 30, 2008, Jilson told him that she would not give him any medical care.

On July 28, 2008, Haag examined Plaintiff, and Plaintiff indicated that he was having pain and bleeding when he ate, because of the missing tooth.  Haag told Plaintiff that he was not entitled to receive a free bridge or denture for the missing tooth.  Plaintiff further states that Haag told him that he would not provide him with a bridge or denture, because of the cost, and because he wanted to teach Plaintiff a lesson about filing grievances against him. Complaint [#1] ¶ 72.

To summarize, in the Complaint [#1], Plaintiff alleges that he was denied dental care including fillings, root canals, and dentures.  He alleges that Haag, Alchimowicz and Hayth denied him appropriate dental care, because it took over fifteen months for him to receive dental treatment after arriving at Southport.  He contends that such denial of

treatment occurred because the dental department inappropriately allowed the nursing staff to have control over determining which inmates received dental care.  He further contends that Haag denied him a denture for his missing tooth to retaliate against him for a grievance.  Plaintiff further alleges that Weed, Gorg, and Jilson denied  him dental care, and that Gorg and Jilson denied such care because they wanted to retaliate against him.  Plaintiff maintains that Fowler, Northrop, and Felker are liable for the violations committed by Weed, Gorg, and Jilson, because they failed to properly train and/or supervise them, as shown by the nurses' behavior. Complaint [#1] ¶ 31.  In addition, he contends that Felker, Gorg, and Jilson denied him medical care, for his dry skin and chest pains, in retaliation for him filing grievances against them.

On July 22, 2009, Plaintiff filed the subject motion [#54] for partial summary judgment, seeking judgment as to liability and damages against Haag, Alchimowicz and Hayth.  Specifically, he seeks compensatory and punitive damages against these three defendants on the grounds that they were deliberately indifferent to his serious dental condition by failing to provide him with treatment for fifteen months, which resulted in the loss of two teeth and considerable pain, and by denying him dentures.  In support of the motion, Plaintiff reiterates the allegations set forth above, and asserts a number of additional facts and events which are not described in the Complaint.  For example, he states that he had five teeth which needing fillings, instead of four.  He further alleges that after losing one of his teeth in July 2008, another tooth broke on September 17, 2008, and the remainder had to be extracted.  He further indicates that in January 2009, Haag informed him that he did not qualify for free dentures under DOCCS' guidelines, but that Plaintiff could purchase a denture for $190.00.  He relates that Haag and Alchimowicz

gave him salt water and ibuprofen to treat his gums, but did not provide him with a denture.  In support of his motion for partial summary judgment, Plaintiff has submitted certain statements and admissions by Defendants, made during discovery.  For example, Haag admits that Plaintiff received no dental treatment from May 11, 2007 until July 28, 2008, even though Plaintiff made requests for treatment.  See, Pl. Partial Summary Judgment Motion, Ex. A.  Defendants further indicate that it usually takes about two months for inmates to receive fillings. *Id*., Ex. B.  Defendants indicate that Hayth and Alchimowicz are responsible for compiling the waiting list for inmates awaiting dental care and treatment, and that inmates are seen based on their place on the list, although an inmate who complains of pain or who has visible swelling will be moved to the top of the list. *Id*.

After filing the subject motion for partial summary judgment [#54], Plaintiff filed a Supplemental Complaint [#60], with the Court's permission.  The Supplemental Complaint asserts claims against all of the same Defendants discussed above, and repeats many of the allegations in the original Complaint.  Plaintiff indicates that on August 29, 2008 and October 8, 2009, he asked Haag for dentures to replace two missing teeth, but Haag denied the request, purportedly because Plaintiff had filed grievances against him.  On January 16, 2009, Haag indicated that Plaintiff did not meet DOCCS guidelines for receiving free dentures, but that he could pay for the dentures himself at a cost of $190.00.   Plaintiff further states that Fowler and Gorg denied him physical therapy for muscle cramps in his back, in retaliation for him filing grievances. Plaintiff characterizes his retaliation claims as claims under the Fourteenth Amendment Equal Protection Clause, on the theory that Defendants have treated him differently than

inmates who have not filed grievances against Defendants.

On April 16, 2010, Defendants Haag, Alchimowicz, and Hayth filed the subject cross-motion for partial summary judgment [#69].  Defendants base their application, in part, on prior rulings by the Court in this case.  For example, in denying an application by Plaintiff for preliminary injunctive relief, the Court indicated that Plaintiff's assertion that he required a root canal was a mere disagreement over treatment, that did not rise to the level of an Eighth Amendment violation.  The Court also indicated that Plaintiff had not shown that he was entitled to free dentures under DOCCS guidelines.  Defendants further maintain that Plaintiff's dental claims should be dismissed because he failed to exhaust his administrative remedies.  In that regard, Defendants state that although Plaintiff filed various grievances concerning the denial of medical care, he did not file the first of those grievances until July 2008.  Defendants further argue that pursuant to 7 NYCRR § 701.5(a)(1), grievances must be filed within 21 days of the occurrence, and that "failure to timely present a timely grievance precludes exhaustion of administrative remedies." Def. Memo of Law [#69] at 9.

In support of their opposition/cross-motion, Defendants submit an affidavit from Haag, in which he suggests that the delay in providing dental care to Plaintiff was due to the number of inmates at Southport and the limited amount of time that was available to treat them all.  Haag further indicates that Plaintiff was not entitled to receive free dentures under DOCCS guidelines, and that he did not retaliate against Plaintiff.

ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party ." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.

1993).  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c).  Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).[3]

<u>Exhaustion of Administrative Remedies</u>

Defendants maintain that the claims against Haag, Alchimowicz and Hayth must be dismissed pursuant to 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Generally, in order to satisfy 42 U.S.C. § 1997e(a), a plaintiff must file a grievance with respect to the challenged behavior, using DOCCS's Inmate Grievance Program procedures. Assuming that the grievance is denied, he must then exhaust the grievance appeal process, by appealing to the facility Superintendent, and then to the Central Officer Review Committee ("CORC").

However, the Second Circuit has identified circumstances in which an inmate's unsuccessful attempt to exhaust may still meet the exhaustion requirements of § 1997e(a). *See Hemphill v. N.Y.*, 380 F.3d 680 (2d Cir.2004), *Giano v. Goord*, 380 F.3d 670 (2d Cir.2004), *Johnson v. Testman*, 380 F.3d 691 (2d Cir.2004).  In that regard,

> [w]hile the Second Circuit has recognized that the PLRA's exhaustion requirement is mandatory, it has also recognized three exceptions to the exhaustion requirement: "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement."

---

[3] Defendants provided Plaintiff with the "Irby" Notice to *Pro Se* Litigants as required by Local Rule of Civil Procedure 56.2. (Docket No. [# 69-2] ).

*Chisholm v. New York City Dept. of Correction,* No. 08 Civ. 8795(SAS), 2009 WL 2033085 at *2 (S.D.N.Y. Jul. 13, 2009) (*quoting Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006)).

Here, it is undisputed that Plaintiff filed various inmate grievances concerning the issues raised in this action, which he pursued through the various levels of review, and some of which were granted in part. Defendant's objection seems to be that Plaintiff did not file the first of these grievances until July 8, 2008, and that under 7 NYCRR § 701.5, such grievance would not be timely except for matters that occurred within twenty-one days prior to such filing. *See*, 7 NYCRR § 701.5(a)(1) ("An inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form (form #2131)."). Accordingly, the Court understands Defendants' motion for partial summary judgment on this point to be directed at any dental claims which arose more than twenty-one days prior to July 8, 2008. However, that same regulation provides the Inmate Grievance Program ("IGP") Supervisor has the power to make exceptions to such time limit. *See, id.* ("Exceptions to this time limit or any appeal time limits may be approved by the IGP supervisor under section 701.6(g) of this Part."). Moreover, it appears that the IGP Supervisor did exactly that in this case, since Plaintiff's grievance which was filed on July 8, 2008 was accepted for filing, and was addressed on its merits, by the IGP Supervisor, the facility Superintendent, and CORC, even though it complained about the fact that Plaintiff had been denied dental care since May 2007. *See*, Pl. Motion for Partial Summary Judgment, Ex. U. Therefore, to the extent that Defendants' cross-motion is based on Plaintiff's alleged failure to exhaust administrative remedies, it is denied.

<u>*Eighth Amendment Deliberate Indifference Claim*</u>
<u>*Against Haag, Alchimowicz, and Hayth*</u>

As discussed earlier, Defendants maintain that they are entitled to summary

judgment, because Plaintiff's claims involve a mere disagreement over treatment, and

because the Court has already ruled that the claims lack merit insofar as they pertain to

the alleged denials of root canals and dentures.  Plaintiff is suing pursuant to 42 U.S.C. §

1983, and the legal principles applicable to such claims are well-settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that
> the defendant is a "person" acting "under the color of state law," and (b) that the
> defendant caused the plaintiff to be deprived of a federal right. *See e.g., Monroe v.*
> *Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).  Additionally, "[i]n this
> Circuit personal involvement of defendants in alleged constitutional deprivations is
> a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568
> F.2d 930, 934 (2d Cir.1977).
>
> An individual cannot be held liable for damages under § 1983 "merely
> because he held a high position of authority," but can be held liable if he
> was personally involved in the alleged deprivation. *See Black v. Coughlin*,
> 76 F.3d 72, 74 (2d Cir. 1996).  Personal involvement can be shown by:
> evidence that: (1) the defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being informed of the
> violation through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional practices
> occurred, or allowed the continuance of such a policy or custom, (4) the
> defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate
> indifference ... by failing to act on information indicating that unconstitutional
> acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.
> 1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir.

2004).

Plaintiff alleges that Defendants violated his Eighth Amendment rights in

connection with his dental care, and the legal standard for such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate
> medical care, a prisoner must prove deliberate indifference to his serious

medical needs.  This standard incorporates both objective and subjective
elements.  The objective 'medical need' element measures the severity of
the alleged deprivation, while the subjective 'deliberate indifference'
element ensures that the defendant prison official acted with a sufficiently
culpable state of mind.

Because the Eighth Amendment is not a vehicle for bringing medical
malpractice claims, nor a substitute for state tort law, not every lapse in
prison medical care will rise to the level of a constitutional violation.  [T]he
Supreme Court [has] explained that the Eighth Amendment's prohibition on
cruel and unusual punishments encompasses the deliberate failure to treat
a prisoner's serious illness or injury resulting in the infliction of unnecessary
pain and suffering.  Because society does not expect that prisoners will
have unqualified access to health care, a prisoner must first make this
threshold showing of serious illness or injury in order to state an Eighth
Amendment claim for denial of medical care.  Similarly, a prisoner must
demonstrate more than an inadvertent failure to provide adequate medical
care by prison officials to successfully establish Eighth Amendment liability.
An official acts with the requisite deliberate indifference when that official
knows of and disregards an excessive risk to inmate health or safety, a
state of mind equivalent to the familiar standard of 'recklessness' as used in
criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citations and internal quotations

omitted).  Courts have repeatedly held that disagreements over treatment do not rise to

the level of a Constitutional violation. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d

Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does

not create a constitutional claim.").  Similarly, negligence constituting medical

malpractice, without more, will not establish a constitutional claim. *Id.* (citation omitted).

Here, at the outset the Court agrees that Plaintiff's dental claims concerning root

canals and dentures must be dismissed.  In its Decision and Order [#31] filed on April 14,

2009, the Court indicated that Plaintiff's claim that he was denied a root canal was not

actionable as an Eighth Amendment claim, since it amounted to a mere disagreement

over treatment. *See, id.* at p. 5.  Moreover, in its Decision and Order [#55] filed on

September 4, 2009, the Court explained why Plaintiff has failed to show that he is entitled

to free dentures under DOCCS guidelines. *See*, [#55] at pp. 7-8.  Moreover, Plaintiff has failed to come forward with sufficient evidentiary proof in admissible form to sustain his contention that Haag denied him free dentures based on retaliatory animus.  On this point, although Plaintiff maintains that Haag told him that he refusing to give Plaintiff dentures in order to teach him a lesson about filing grievances, he also contends that Haag told him that he did not qualify for free dentures in any event.  Therefore, even if Haag made such an incriminating statement, which the Court must assume for purposes of this motion, he is still entitled to summary judgment on the retaliation claim since it appears clear that he would have denied Plaintiff's request for free dentures even in the absence of any protected activity or retaliatory motive.[4] *See, Davidson v. Kelly*, 131 F.3d 130, 1997 WL 738109 at *3 (2d Cir. Nov. 24, 1997) (table) ("In order to prevail on a retaliation claim, an inmate must show that his protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff.  If an inmate makes this showing, the defendants are still entitled to summary judgment if they show that they would have taken the same action in the absence of the prisoner's First Amendment activity.") (citations omitted).

However, to the extent that the parties have cross-moved for summary judgment on Plaintiff's claim that he was denied dental treatment between May 2007 and July 2008, the applications are denied.  Dental cavities left untreated can constitute a serious medical need. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) ("[A] tooth cavity

---

[4] Based on DOCCS rules, it appears that Haag did not have authority to give Plaintiff free dentures, even if he wanted to do so. See, Decision and Order [#55] at pp. 7-8; see also, Pl. Statement of Facts, ¶ 47 ("Haag notified the Southport Grievance Committee that the Plaintiff does not meet [DOCCS] guidelines fo a partial denture."); *see also*, Haag Affidavit ¶ 10 ("[O]ur dental treatment of Plaintiff would have been the same even if he had not filed any inmate grievances.").

is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction.") (citations omitted).  Moreover, in *Harrison* the Second Circuit noted that "[d]istrict courts in this Circuit have ruled that a one-year delay in treating a cavity can evidence deliberate indifference on the part of prison officials." *Harrison*, 219 F.3d at 138 (citations omitted).  In the instant case there are material issues of fact, concerning Plaintiff's claim that he was denied dental care between May 2007 and July 2008, which preclude summary judgment for Plaintiff or Defendants.

### *Apparent Lack of Personal Involvement by Weed*

Although Defendants have not raised this issue, the Court observes that based on its review of the record there does not appear to be any basis for a claim against Weed. In that regard, Plaintiff merely contends that immediately upon his arrival at Southport he notified Weed that he needed dental fillings.  There is no indication that Weed failed to record or convey that information.  Moreover, it is undisputed that Haag and Alchimowicz independently reviewed Plaintiff's dental records on May 14, 2007, three days after he arrived at Southport, and that they placed Plaintiff's name on the dental waiting list the same day. *See*, Plaintiff's Motion for Partial Summary Judgment, Ex. C [#54-7], ¶ ¶ 5, 7-8, 10.  Weed did not have any involvement in deciding how quickly Plaintiff received dental treatment once his name was placed on the waiting list. *See*, Pl. Motion for Partial Summary Judgment, Ex. B [#54-7] at ¶ ¶ 20-21.   The delay in Plaintiff receiving dental and medical care does not appear to have resulted from anything that Weed did, and consequently there does not appear to be any basis for a jury to find Weed liable for violating Section 1983.  Accordingly, Plaintiff is hereby ordered to show cause in writing,

within thirty (30) days after the date of filing of this Decision and Order why the Court should not grant summary judgment in favor of Weed. *See*, FRCP 56(f) ("After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.")  Plaintiff must support his written response with an affidavit or other evidentiary proof in admissible form.  Plaintiff's failure to respond to this Decision or Order, or his failure to demonstrate why the Court should not grant summary judgment to Weed, may result in the dismissal of his claim against Weed.

CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment [#54] is denied, and Defendants' Cross-Motion for Partial Summary Judgment [#69] is granted in part and denied in part.  Defendants are granted summary judgment on Plaintiff's claims to the extent that they involve the alleged denial of root canals or dentures.  **Plaintiff is hereby ordered to show cause in writing, within thirty (30) days after the date of filing of this Decision and Order why the Court should not grant summary judgment in favor of Weed**.

So Ordered.

Dated: Rochester, New York
      November 29, 2011

ENTER:


/s/ Charles J. Siragusa_____
CHARLES J. SIRAGUSA
United States District Judge