UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDRE SMITH,
                              Plaintiff

vs-                                                            DECISION AND ORDER

                                                                             08-CV-6360 CJS

DR. RAYMOND HAAG, et al.,
                              Defendants
_____

INTRODUCTION

     This is an action pursuant to 42 U.S.C. § 1983 in which Andre Smith ("Plaintiff"), who was formerly a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that Defendants were deliberately indifferent to his serious need for dental care, in violation of the Eighth Amendment. The matter is ready for trial. Now before the Court are the following applications: 1) Plaintiff's application (Docket No. [#77] for appointment of *pro bono* counsel; 2) Plaintiff's application [#80] for an order directing the Los Angeles County Jail to house him during the trial in this action; 3) Plaintiff's application [#81] for a writ of habeas corpus *ad testificandum*, permitting him to personally attend the trial in this action; 4) Defendants' motion [#82] to enforce a settlement; and 5) Plaintiff's "motion" [#84] in opposition to Defendants' application, which is actually just a response to Defendant's motion [#82], and not an actual motion. All of the applications are denied.

BACKGROUND

     On August 11, 2008, Plaintiff, who has apparently now changed his name to Andre Stuckey, proceeding *pro se*, commenced this action against several members of the medical

1

staff at DOCCS' Southport Correction Facility ("Southport").  In December 2011, the Court denied, in part, Defendants' motion for partial summary judgment, and ruled that Plaintiff's claims involving the alleged denial of dental care, between May 2007 and July 2008, could proceed to trial. *See*, Decision and Order (Docket No. [#70]).

Since that time, the action has been ready for trial.  In the interim, as discussed more fully below, the Court has been considering various options as to how to conduct the trial, in light of the fact that Plaintiff is now incarcerated in California.  In that regard, while this action was pending, in or about October 2009, Plaintiff was released from DOCCS' custody.  Shortly thereafter, Plaintiff, who has a very lengthy criminal record, traveled to the State of California, where he committed yet another crime, burglary.  Plaintiff was convicted of that crime, and on September 30, 2011, he was sentenced to seventeen years in California's state prison system.[1]  Barring a successful appeal or collateral attack, Plaintiff will remain imprisoned in California until 2028.

Presently, Plaintiff is housed at Kern Valley State Prison ("Kern Valley"), in Delano, California, which, according to the website of the California Department of Corrections & Rehabilitation, is a Level IV facility, the highest security level in the California system.  The Court has consulted with an official at Kern Valley, who indicates that the prison does not have video-conferencing capability.[2]

The Court has been hopeful that the parties would settle this matter.  On this point, Plaintiff and the Office of the New York State Attorney General were recently able to settle

---

[1] Plaintiff has prior convictions in California, New York, Washington and Massachusetts.

[2] Will Adams, Corrections Counselor II at Kern Valley, informed the Court that the facility houses certain videoconferencing equipment belonging to "federal health care receiver," but it is not available for general use. For information regarding the federal health receiver, *see*, http://www.cphcs.ca.gov/

two other actions that Plaintiff had pending in this district.[3] However, as discussed below, the parties have not yet reached any agreement to settle this action.

With this general background, the Court will proceed to consider Plaintiff's applications.

## DISCUSSION

<u>Motion to Enforce Settlement</u>

Plaintiff is an experienced *pro se* litigator. Plaintiff commenced five actions in this Court between 2004 and 2008, while he was in DOCCS' custody.[4] The first action ended after trial with a jury verdict for defendants, the second was dismissed on defendants' summary judgment motion, two were settled, and the instant action remains pending. Plaintiff has also litigated at least three actions in the U.S. District Court for the Southern District of New York,[5] and has likely commenced actions in other districts, too.

After the Court denied Defendants' summary judgment motion in part, Plaintiff offered to settle the action for $1,500.00. Plaintiff repeated that offer in writing, several times. More specifically, Plaintiff initially made the settlement offer on February 4, 2014, in a letter in which he indicated that he would settle the matter for $1,500.00, and asked Defendants to send him "the necessary stipulation papers." On February 11, 2014, Plaintiff sent Defendants another letter, repeating that offer. On April 19, 2014, the Court conducted a pretrial conference, at which Plaintiff repeated his settlement demand of $1,500.00. On May 6, 2014, Plaintiff sent another letter to Defendants, reiterating his offer to settle the action

---

[3] *Smith v. Spitzer*, 08-CV-6029 (CJS)(MWP) and *Smith v. Fischer*, 07-CV-6350 (CJS)(MWP).

[4] *See, Smith v. Goord, et al.*, 04-CV-6432, *Smith v. Goord, et al.*, 07-CV-6265, *Smith v. Fischer, et al.*, 07-CV-6350, *Smith v. Spitzer, et al.*, 08-CV-6029, *Smith v. Haag, et al.*, 08-CV-6360.

[5] *See, Smith v. City of New York*, No. 03 Civ. 7576 (NRB), 2005 WL 1026551 (S.D.N.Y. May 3, 2005) (discussing other actions by this Plaintiff).

for $1,500.00.

However, although Plaintiff's settlement offer seems to have been eminently reasonable, Defendants inexplicably delayed making any decision about it for seven months. Instead, between June 6, 2014 and July 14, 2014, Defendants' counsel wrote to Plaintiff three times, indicating that Defendants were still considering the settlement offer.

By early August 2014, Plaintiff had apparently become tired of waiting for a response from Defendants, because on August 13, 2014, the Court received a letter from him, indicating in pertinent part:

> This case is now ready for trial. The parties' last effort to resolve this case by settlement ha[s] failed. Therefore, I would appreciate it if this Court would schedule a final pre-trial conference so that a trial date can be set.

(undated Stuckey letter, postmarked August 5, 2014) (citation and internal underlining omitted). Defendants' counsel is listed as having been copied on the letter, but he maintains that he never received Plaintiff's letter.

Shortly thereafter, on August 21, 2014, Defendants' counsel sent a letter to Plaintiff, purporting to accept Plaintiff's settlement offer of $1,500.00, and enclosing a proposed stipulation of settlement. Defendants' counsel's transmittal letter stated, in pertinent part: "Upon the Court's filing of the duly executed Stipulation and Order of Settlement, I will then see that it is forwarded to the appropriate State authorities for processing and payment."

The Court will briefly note a few features of the proposed Stipulation and Order of Settlement, because they are relevant to the analysis below. First, the proposed stipulation states, in pertinent part as follows:

> WHEREAS, the parties are interested in resolving all the remaining issues alleged in the complaint of this action, subsequent amended complaint(s) and/or proposed amended complaint(s) in this action and have negotiated in

> good faith for that purpose;
>
> ***
>
> IT IS HEREBY STIPULATED AND AGREED by and between the parties . . . [that] any claims or causes of action . . . arising out of any of the incidents alleged in the complaint, amended complaint and/or proposed amended complaint(s) are hereby settled for the sum of one thousand five hundred dollars ($1,500.00).
>
> ***
>
> Nothing in this So Ordered Stipulation of Settlement shall be constructed [sic] as an admission or concession of liability whatsoever by the defendants[.]
>
> ***
>
> Payment of the amount recited [above to Plaintiff] is subject to the approval of all appropriate New York State Officials in accordance with the provision for indemnification under New York Public Officers Law Section 17.
>
> ***
>
> Payment of the amounts recited [above to Plaintiff] will be made within one hundred twenty (120) days after the approval of this stipulation by the Court and receipt by defendants' counsel of a copy of the fully executed so-ordered stipulation of settlement as entered by the Court. In the event that the aforesaid payment is not made within the one hundred twenty (120) day period, interest shall accrue on the outstanding principal balance at the rate set forth in 28 U.S.C. § 1961 beginning on the one hundred twenty-first (121) day after receipt by defendants' counsel of a copy of the fully executed so-ordered stipulation of settlement.
>
> ***
>
> This Stipulation and Order of Settlement embodies the entire agreement of the parties in this manner [*sic*, presumably intending to mean "matter"].

Further, the proposed stipulation required Plaintiff, but no one else, when signing the agreement, to verify under penalty of perjury that the statements contained therein were "true and correct."

However, Plaintiff declined to sign the proposed settlement agreement. Instead, on August 29, 2014, Plaintiff responded by letter, to Defendants' counsel and to the Court, stating in pertinent part:

> After consulting with a few attorneys regarding the facts in this case, I would

> like to inform you that the Plaintiff is withdrawing his settlement proposal and would like to proceed to trial in this case.

(Stuckey letter dated Aug. 29, 2014). Shortly thereafter, Plaintiff increased his settlement demand to $10,000.00, but Defendants declined that offer.

On October 1, 2014, Defendants filed the subject motion [#82] to enforce a purported settlement. In that regard, Defendants contend that they accepted Plaintiff's settlement offer, and that he should be bound by the resulting agreement. However, Plaintiff maintains that he withdrew his settlement offer before Defendants accepted it, and that, consequently, there never was an agreement.

In deciding whether an enforceable settlement agreement was reached, the Court must apply well-settled principles of contract law:

> It is black letter law in the Second Circuit that settlement agreements are contracts and must therefore be construed according to general principles of contract law.
>
> ***
>
> To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound. Once reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing. Moreover, a district court has the power to enforce summarily, on motion, a settlement agreement reached in a case pending before it.

*Case v. City of New York*, No. 12 Civ. 2189(AJN)(AJP), 2012 WL 5951296 at *2-3 (S.D.N.Y. Nov. 28, 2012) (citations and internal quotation marks omitted).

However, the parties can choose not to be bound until they have a signed, written agreement. In that regard,

> [u]nder New York law, parties are free to enter into a binding contract without

memorializing their agreement in a fully executed document. This freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement. In such a case, the mere intention to commit the agreement to writing will not prevent contract formation prior to execution. *On the other hand, if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract.* Because of this freedom to determine the exact point at which an agreement becomes binding, a party can negotiate candidly, secure in the knowledge that he will not be bound until execution of what both parties consider to be final document.

In any given case it is the intent of the parties that will determine the time of contract formation. To discern that intent a court must look to the words and deeds of the parties which constitute objective signs in a given set of circumstances. We have articulated several factors that help determine whether the parties intended to be bound in the absence of a document executed by both sides. The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. These circumstances may be shown by oral testimony or by correspondence or other preliminary or partially complete writings.

*Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80-81 (2d Cir. 1985) ("*Winston*") (emphasis added, citations omitted).

Defendants maintain that the parties reached a settlement agreement, based upon their exchange of letters, and that the written settlement agreement was merely intended to formalize what they had already agreed to. Defendants further maintain that the *Winston* factors weigh in favor of finding that an enforceable agreement exists. More specifically, Defendants contend, with regard to the *Winston* factors, as follows: 1) neither party expressed the intent not to be bound in the absence of a formal written agreement; 2)

Defendants "partially performed" their obligations under the agreement by drafting settlement papers and forwarding them to Plaintiff; 3) all the terms of agreement had already been agreed upon; and 4) the agreement was not the kind that is usually committed to writing, since the matter was not complex and only a small amount of money is involved.

However, the Court disagrees with Defendants, and finds that even assuming Defendants accepted Plaintiff's offer before he revoked it, there is still no enforceable agreement, since it is apparent that, despite what Defendants now claim, they did not intend to be bound in the absence of a fully-executed written settlement agreement. For example, the written stipulation drafted by Defendants indicates that they have no obligation to pay Plaintiff until after the stipulation is "fully executed [and] so ordered" and approved by "all appropriate New York State officials." *See, Ciaramella v. Reader's Digest Association, Inc.*, 131 F.3d 320, 324 (2d Cir. 1997) (finding no intent to be bound in the absence of a written settlement agreement, where, "[u]nder the terms of the proposed settlement, [the defendant] had no obligation to pay [the plaintiff] until the agreement was signed and became effective."); *see also, CAC Group, Inc. v. Maxim Group LLC*, 523 Fed.Appx. 802, 804, 2013 WL 1831672 at *1 (2d Cir. May 2, 2013) ("In applying these [*Winston*] factors, we are mindful of a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents.").

Similarly, the proposed stipulation's "whereas" clauses, along with the phrase "IT IS HEREBY STIPULATED AND AGREED," "demonstrate[ ] that only the terms of the settlement agreement, and not any preexisting pact, would legally bind the parties." *Ciaramella*, 131 F.3d at 324; *see also, CAC Group, Inc. v. Maxim Group LLC*, 523

Fed.Appx. at 805 ("This language indicates that the parties understood that the written agreement would effectuate a binding contract and not merely memorialize a contract that had already been entered into."). Likewise, the proposed stipulation contains a merger clause, which "is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Ciaramella*, 131 F.3d at 324. Under the first *Winston* factor, which is considered to be the most important, all of these facts weigh very strongly in favor of finding that Defendants did not intend to be bound in the absence of a fully-executed stipulation of settlement.

As for the second *Winston* factor, the Court finds that there has been no partial performance. On that point, the issue "is whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." *Ciaramella*, 131 F.3d at 325. Here, the Court does not agree with Defendants that preparing a written stipulation of settlement and/or mailing it to Plaintiff constituted partial performance of Defendants' obligations under the proposed settlement. If Defendants were correct, then this factor would almost invariably weigh in favor of the proponent of the proposed settlement in every case.[6] However, even assuming that the preparation of a stipulation could constitute partial performance, it is clear that Plaintiff did not accept such partial performance. Accordingly, this factor also weighs against Defendants.

---

[6]On this point, Defendants attempt to rely on *Case v. City of New York*, cited earlier, for the proposition that partial performance exists "where a party prepares paperwork for the plaintiff to sign and then mails the paperwork to the plaintiff." Defs. Memo of Law at p. 7. However, in *Case*, the court found partial performance where the defendant both sent the plaintiff the proposed settlement agreement *and* "ceas[ed] to pursue discovery from him." *Case*, 2012 WL 5951296 at *6. To the extent that Defendants also rely, for that same proposition, on *Wesley v. Corrections Officer Badge No. 9417*, No. 05 Civ. 5912, 2008 WL 41129 at *3 (S.D.N.Y. Jan. 2, 2008), this Court does not agree with the reasoning in the *Wesley* decision on that point.

As for the third *Winston* factor, Defendants contend that the parties agreed on all the material terms of the settlement, which weighs in favor of finding that they intended to be bound without a further written agreement. In that regard, Defendants point out that Plaintiff had already executed several nearly-identical agreements in conjunction with settlements in other actions, and that he did not, as part of his offer, propose any changes to the standard form agreement used by the Office of the Attorney General. The Court agrees that this factor may weigh in Defendants' favor.

As for the fourth *Winston* factor, though, the Court finds that this was the type of agreement that would usually be reduced to a writing, which weighs against finding that the parties intended to be bound in the absence of an executed written agreement. On this point, Defendants suggest that this factor weighs in their favor, in light of the relatively small amount of money and "low level of complexity" involved in the settlement.[7] At the outset, however, if the matter was so uncomplicated, it is unclear why it took Defendants seven months to consider Plaintiff's settlement offer. Beyond that, settlement agreements and stipulations of discontinuance are generally in writing, and in the Court's seventeen years on this bench it has never observed DOCCS or the New York State Attorney General settle a lawsuit in the absence of a fully-executed written stipulation of settlement, except perhaps where an oral settlement was put on the record in open court, which did not happen here. *See, Ciaramella*, 131 F.3d at 326 ("Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court.") (citation omitted). Accordingly, the fourth *Winston* factor weighs against finding that the parties intended to be bound in the absence of a written stipulation of settlement.

---

[7]Def. Memo of Law at p. 8.

For all of the foregoing reasons, Defendants' motion to enforce a settlement is denied. There being no settlement at this time, the Court will proceed to consider the remaining applications, which all pertain to the impending trial in this action.

<u>Plaintiff's motion for appointment of counsel [#77]</u>

As discussed further below, Plaintiff has made a motion for a writ of habeas corpus *ad testificandum*, which would allow him to be brought to New York from California for his civil trial. However, Plaintiff has alternatively requested appointment of counsel, in the event that his application for a writ of habeas corpus *ad testificandum* is denied. In such event, Plaintiff maintains that he will need an attorney because he will not be physically present in court "to present physical evidence to the jury."

There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g., Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). Assignment of counsel in this matter is clearly within the judge's discretion. *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984). The factors to be considered in deciding whether or not to assign counsel include the following:

1. Whether the indigent's claims seem likely to be of substance;
2. Whether the indigent is able to investigate the crucial facts concerning his claim;
3. Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;
4. Whether the legal issues involved are complex; and
5. Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*,

802 F.2d 58 (2d Cir. 1986).[8]

Applying these factors the Court finds that appointment of counsel is not warranted. At the outset, the Court knows from its experience with Plaintiff, in this action and in other actions, that he is capable of representing himself at trial. Nevertheless, since the Court is denying Plaintiff's application for writ of habeas corpus *ad testificandum*, as discussed below, it seems clear that he will need an attorney. However, while that may be true, Plaintiff has not shown that he is entitled to appointment of *pro bono* counsel, since it is clear that he is capable of retaining his own attorney. More specifically, Plaintiff contends, and the Court accepts, that his claim is the type for which he ought to be able to retain an attorney on his own. That is, Plaintiff's claim has already survived summary judgment, and in connection with his decision to withdraw his settlement offer, he informed the Court that he has consulted with attorneys, who purportedly indicated that his case was worth much more than what he had previously demanded to settle the action. Furthermore, since Plaintiff's action is brought pursuant to 42 U.S.C. § 1983, an attorney representing him, if successful, could recover attorney fees under 42 U.S.C. § 1988(b). Consequently, the Court sees no reason why it should require an attorney to represent Plaintiff for free when Plaintiff should have no difficulty retaining his own attorney. *See, generally, Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170 (2d Cir. 1989); *see also, Sanchez v. Murray*, No. 84 Civ. 9046 (JFK), 1985 WL 1522 at *1 (S.D.N.Y. Jun. 1, 1985) ("A person may sometimes be unable to locate an attorney to prosecute a meritorious claim, or may even be incapable of locating an attorney. Nonetheless, plaintiffs, under all but the most unusual circumstances, should make

---

[8] Applying these same factors, the Court previously denied a prior application for appointment of counsel by Plaintiff, since he had not made a proper showing that he was entitled to such relief. *See*, Order [#77].

12

some efforts to obtain an attorney."). Accordingly, Plaintiff's application for appointment of counsel [#77] is denied at this time. Plaintiff should attempt, by mail and/or telephone, to retain an attorney either in the Rochester area or who is willing to travel to Rochester for trial.

<u>Plaintiff's motion for a writ of habeas corpus ad testificandum [#77]</u>

The Court has received many letters from Plaintiff, requesting that he be permitted to personally attend trial. Plaintiff indicates that one alternative to having him transported between California and New York for his trial is to have him permanently transferred to the custody of DOCCS pursuant to the "Interstate Correction Compact (California Penal Code 11191)." Plaintiff indicates that he has talked to corrections officials in California about this, who seem agreeable to such a transfer. He also requests that this Court "advocate" for him, by contacting officials in New York and California and "requesting that the two states sign a contract allowing Plaintiff to be transferred to New York on a permanent basis." However, this Court has no intention of involving itself in that matter. Nor has the Court seen any evidence that New York and California are actually considering such an arrangement. Consequently, the transfer that Plaintiff suggests is not a realistic option.

Alternatively, Plaintiff asks the Court to have him brought here for trial pursuant to a writ of habeas corpus *ad testificandum*. It is clear that the Court has the power to do so, if it chooses. *See, e.g., Stone v. Morris*, 546 F.2d 730 (7th Cir. 1976) ("[A] district court has the power, although to be exercised with discretion, to compel production of an incarcerated party or witness from anywhere in the country through the use of a writ of habeas corpus ad testificandum."). Nevertheless, the Court must consider a number of factors in deciding whether to exercise its discretion:

It is well settled that a plaintiff prisoner does not have a constitutional right to

be physically present at the jury trial of his civil rights claim. *See, e.g., Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir.2005); *Hernandez v. Whiting*, 881 F.2d 768, 770 (9th Cir.1989); *Am. Inmate Paralegal v. Cline*, 859 F.2d 59, 62 (8th Cir.1988); *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir.1987); *Bacon v. United States*, No. 9:01-CV-1688, 2007 WL 778412, at *1 (N.D.N.Y. Mar. 13, 2007); *Story v. Robinson*, 531 F.Supp. 627, 630 (D.C.Pa.1982). "[R]ather, the district court has discretion to determine whether a prison inmate can attend court proceedings in connection with an action initiated by the inmate." *Thornton*, 428 F.3d at 697. *See, Atkins v. City of New York*, 856 F.Supp. 755, 757 (E.D.N.Y.1994) ("The decision to issue a writ of habeas corpus ad testificandum is committed to the sound discretion of the district court.") In assessing an inmate's request to attend a civil action, "the trial court must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner." *Thornton*, 428 F.3d at 697. *See Barnes v. Black*, 544 F.3d 807, 810 (7th Cir.2008)(Posner J.)("Writting' prisoners to a distant court entails cost and even danger.") In determining whether it should issue a writ of habeas corpus *ad testificandum*, the district court considers such factors as whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted and whether reasonable alternatives to the inmate's attendance exist which would satisfy the needs of the litigants. *See Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir.1977); *Haywood v. Hudson*, No. CV-90-3287, 1993 WL 150317, at *1 (E.D.N.Y. Apr. 23, 1993); *Miles v. Evans*, 591 F.Supp. 623, 625 (D.C.Ga.1984).

*Twitty v. Ashcroft*, 712 F.Supp.2d 30, 31-32 (D.Conn. 2009).

Considering these factors, the Court finds at the outset that it is not practical to delay trial until Plaintiff is released from prison. As already discussed above, Plaintiff is not scheduled to be released from prison in California until 2028, which would require this action to be stayed for another thirteen years. The Court is not willing to do that.

The Court has also considered the expense that the State of California would incur in complying with a writ of habeas corpus *ad testificandum*. In that regard, on June 28, 2012, in response to an inquiry from this Court, the Warden of North Kern State Prison wrote to the Court, and indicated that it would require at least two deputies to escort Plaintiff to Rochester and back, with the round trip taking approximately sixteen hours, not including layovers, at a rate of $45 per hour per deputy, for a cost of at least $1440.00. The Warden estimated that round trip airfare for Plaintiff and the two deputies would total approximately $1,500.00. Therefore, the cost to the State of California would be approximately three thousand dollars. That amount, which, to the Court, seemed improbably low to begin with, has undoubtedly increased since 2012. Moreover, the Warden asked the Court to consider the fact that California "is currently in a deficit, which severely impacts the California Department of Corrections and Rehabilitation," and is requiring "realignment" and layoffs. *See*, letter of Warden P.L. Vazquez.

The Court has further considered the cost and logistical problems involved with housing and transporting Plaintiff, if he were brought to New York. In that regard, the Court could not require the State of New York to house or transport Plaintiff during the trial, though it could require the U.S. Bureau of Prisons and the U.S. Marshal's Service to do so. *See, Rivera v. Santirocco*, 814 F.2d 859, 862-863 (2d Cir. 1987) ("[A] federal court may use the All Writs Act as authority to order the Bureau of Prisons to house a prisoner, and the Marshals Service to transport the prisoner between the courthouse and the [federal BOP facility], until he is remanded back to the state's custody."). However, the Marshals Service has informed the Court that it opposes such option. More specifically, in response to the Court's inquiry, the Marshals' Service has indicated that housing and transporting Plaintiff during the course of a week-long trial would be costly and impractical, since Plaintiff would

be housed in a federal bureau of prisons facility in Ohio, and would need to be transported back and forth between Ohio and Rochester each day of the trial.

In addition to considering the monetary cost of transporting and housing Plaintiff during trial, the Court has considered the possible security risks that such a move would entail. On July 2, 2012, at the Court's request, Defendants provided, in pertinent part, Plaintiff's disciplinary record for the period he was incarcerated in New York. *See*, letter of Ralph Pernick, Assistant New York Attorney General. The transcript indicates twenty-eight disciplinary incidents, resulting in various punishments, including 38 months in the Special Housing Unit ("SHU").[9] At least two of those incidents involved violent conduct. As for his current placement in California, Plaintiff is currently housed in a maximum security Level IV institution.

On the other hand, Plaintiff maintains that his physical presence at trial would substantially further the resolution of the case, that he would be prejudiced if he could not attend the trial in person, and that he would not pose a security risk. *See*, *e.g.*, Pl. letter dated September 26, 2012. Plaintiff states, for example, that he has numerous witnesses and exhibits,

> and the jury should be allowed to physically view these exhibits face to face and up close and should have the opportunity to touch and view these exhibits . . . . [Furthermore,] the jury would be deprived of the opportunity to view the plaintiffs' demeanor[, and] [t]he Plaintiff would be deprived of persuading the jury by personal impression.

*Id*.; *see also*, Plaintiff's letter to the Court dated July 13, 2012 (discussing reasons why he

---

[9]The Court takes judicial notice of the fact that Southport, where this claim arose, is an all-Special-Housing-Unit (SHU) maximum-security facility reserved for those inmates with the most lengthy SHU disciplinary sentences.

believes that his presence at trial is preferable). Plaintiff further contends that in considering his current security risk, the Court should focus on the fact that he remained well-behaved during his prior trial before this Court.

The Court observes, at the outset, that Plaintiff's concern about the jury being able to see his exhibits is unfounded, since, if he is unable to personally attend the trial, the Court will allow his testimony to be presented by deposition, and the jury will also have an opportunity to see his exhibits. *See*, Fed.R. Civ. P. 32(a)(4)(B)&(C) (concerning the use of depositions at trial when a witness is unavailable). In this regard, the Court expects, based on the discussion above, that Plaintiff will be able to retain an attorney to represent him at trial, who will be able to present his exhibits and deposition testimony. In the event that Plaintiff cannot do so, the Court may have to revisit the question of appointment of counsel.

Further as to the possible use of Plaintiff's deposition at trial, the Court has considered the various options for presenting Plaintiff's testimony in the event that it denies his request for a writ of habeas corpus *ad testificandum*. The most desirable option would be to have Plaintiff testify by video or telephone conferencing, pursuant to FRCP 43(a). *See, Barnes v. Black*, 544 F.3d 807, 810 (7th Cir. 2008) (Observing that FRCP 43(a) allows for testimony "by contemporaneous transmission from a different location," "for good cause in compelling circumstances."). However, the correctional facility in which Plaintiff is housed does not have video conferencing capability, and it would not be practical, during the Course of a trial expected to last at least one week, to either have Plaintiff transported to and from a remote location with video conferencing capability, or to require his current facility to make a telephone available. Consequently, the Court finds that in the instant case the best option, in the event that the Court denies Plaintiff's request for a writ, would be to have his testimony presented by deposition.

As for Plaintiff's contention about him being prejudiced by not attending the trial in person, it is clear that "the absence of a party from part or all of a civil trial is not *per se* prejudicial." *Payne v. Jones*, 711 F.3d 85, 91 (2d Cir. 2013). Nor has Plaintiff made a compelling argument that he would be unduly prejudiced if his testimony were to be presented by deposition in his absence at trial. Accordingly, having considered all of the various factors, Plaintiff's request for a writ of habeas corpus *ad testificandum* is denied.

<u>Plaintiff's application [#80] to be transferred to the Los Angeles County Jail</u>

Plaintiff alternatively requests that he be permitted to "attend" the trial by videoconference from the U.S. District Court in Los Angeles, and that the Court order that he be housed in the Los Angeles County Jail which, he maintains, is located near the federal courthouse. In support of his request, Plaintiff maintains that the Los Angeles County Jail has a "Pro Per Module" for inmates with pending legal actions, where he would like to be housed. According to the Court's research, Los Angeles is approximately 140 miles from Kern Valley.

This application is denied. In the first place, the application assumes that Plaintiff will be permitted to attend his trial by video conference, and that the video conference location will be in Los Angeles. However, as already discussed it is not feasible in this action to have Plaintiff participate in the trial by video conference. Furthermore, even assuming *arguendo* that the Court had the authority to order the State of California to transfer custody of Plaintiff to the County of Los Angeles, it has no intention of doing so. Accordingly, Plaintiff's request to be transferred to the Los Angeles County Jail [#80] is denied.

CONCLUSION

Defendants' motion [#82] to enforce a settlement is denied. The Clerk of the Court is directed to terminate Plaintiff's "motion" [#84] in opposition to Defendants' motion, which

is actually just a response to Defendant's motion [#82], and not an actual motion. Plaintiff's application for appointment of counsel [#77] is denied without prejudice. Plaintiff's application [#81] for a writ of habeas corpus *ad testificandum* is denied. Plaintiff's request to be transferred to the Los Angeles County Jail [#80] is also denied.

This action could have been settled months ago. It remains in the parties' interests to settle this action. If the matter is to proceed to trial, Plaintiff will obviously need to attempt to retain an attorney who is willing to try this case on the terms set forth above. Such newly-retained counsel will also presumably want to depose Plaintiff, which deposition would presumably take place in California. **Within thirty (30) days of the date of this Decision and Order the parties shall notify the Court in writing whether they have settled the action, and if not, Plaintiff shall notify the Court in writing, by the same date, of the name, address and telephone number of his retained attorney. Plaintiff's failure to comply with this Order may result in the dismissal of this action for failure to prosecute.**

SO ORDERED.

Dated: Rochester, New York
March 2, 2015

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge